**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

| | |
|---|---|
| RICHARD BUTLER and TIMOTHY KNOTTS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRMONT FEDERAL CREDIT UNION,<br><br>Defendant. | **Civil Case No. 1:25-cv-00094-JPB** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CLASS CERTIFICATION, AND FOR AUTHORIZATION OF CLASS NOTICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. BACKGROUND ........ 2

A. OVERVIEW OF THE LITIGATION ........ 2

B. MEDIATION AND SETTLEMENT ........ 4

C. THE TERMS OF THE PROPOSED SETTLEMENT ........ 5

1. The Settlement Class ........ 5

2. The Settlement Fund ........ 6

3. Proposed Injunctive Relief - Data-Security Enhancements ........ 7

4. Proposed Notice and Claims Program; Settlement Benefits ........ 7

a. Out-of-Pocket Loss Reimbursement ........ 8

b. Reimbursement for Attested Time ........ 8

c. Alternative Cash Payment. ........ 8

d. Identity-Theft Protection. ........ 8

5. Pro Rata Adjustment ........ 9

6. Attorneys' Fees, Expenses, and Service Awards ........ 9

7. Releases ........ 10

II. ARGUMENT ........ 10

A. THE COURT HAS ARTICLE III JURISDICTION FOR PURPOSES OF PRELIMINARY APPROVAL ........ 10

B. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED ........ 10

C. STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS ........ 12

D. THE PROPOSED SETTLEMENT IS FAIR ........ 14

1. The Proposed Settlement is the Product of Good Faith Bargaining at Arm's Length ........ 14

2. This Case is at an Appropriate Posture for Settlement ........ 15

3. Sufficient Discovery Has Been Conducted .......... 15

4. Plaintiffs' Counsel is Qualified and Experienced in Similar Litigation .......... 16

5. The Proposed Settlement is Adequate .......... 16

a. The Relative Strength of Plaintiffs' Claims .......... 17

b. Weaknesses in the Plaintiff's Case .......... 17

c. The Cost of Additional Litigation .......... 17

d. Defendant's Ability to Pay a Judgment .......... 18

e. There is no opposition to the settlement .......... 18

E. THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS .......... 18

F. THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 CLASS FOR SETTLEMENT PURPOSES .......... 20

1. Fed. R. Civ. P. 23(a) Requirements are Satisfied .......... 20

a. Rule 23(a)(1) – "Numerosity" .......... 21

b. Rule 23(a)(2) – "Commonality" .......... 21

c. Rule 23(a)(3) – "Typicality" .......... 22

d. Rule 23(a)(4) – "Adequacy" .......... 23

2. The Rule 23 Class Should Be Certified Under Rule 23(b) .......... 24

a. Predominance is Satisfied .......... 24

b. Superiority is Satisfied .......... 25

G. THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED .......... 26

H. LYNCH CARPENTER, LLP, THE GIATRIS LAW FIRM AND THE PENCE LAW FIRM SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT CLASS .......... 26

I. THE PROPOSED ATTORNEYS' FEES ARE REASONABLE .......... 27

III. CONCLUSION .......... 28

# TABLE OF AUTHORITES

**Cases** **Page(s)**

*Alloways v. Cruise Web, Inc.*,
No. 8:17-CV-02811, 2019 WL 1902813 (D. Md. Apr. 29, 2019)....................17

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)....................24, 25

*In re Anthem, Inc. Data Breach Litigation*,
327 F.R.D. 299 (N.D. Cal. 2018)....................25

*Austin v. Pennsylvania Dep't of Corrs.*,
876 F. Supp. 1437 (E.D. Pa. 1995)....................14

*Barnett v. W.T. Grant Co.*,
518 F.2d 543 (4th Cir. 1975)....................23

*Baust v. City of Virginia Beach*,
574 F. Supp. 3d 358 (E.D. Va. 2021)....................11

*Benway v. Resource Real Estate Servs., LLC*,
2011 WL 1045597 (D. Md. Mar. 16, 2011)....................11

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015)....................14

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir.1998)....................22

*Cuthie v. Fleet Reserve Ass'n*,
743 F. Supp. 2d 486 (D. Md. October 18, 2010)....................25

*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967)....................21

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006)....................22

*Edelen v. Am. Residential Servs., LLC*,
Civil Action No. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013)....................27

*Fisher v. Va. Elec. & Power Co.*,
217 F.R.D. 201 (E.D. Va. 2003)....................22, 23

*Frank v. Gaos*,
139 S. Ct. 1041 (2019)....................10

*Gaskin v. Pennsylvania*,
389 F. Supp. 2d 628 (E.D. Pa. 2005) ....................14

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ....................13

*Gray v. Hearst Commc'ns, Inc.*,
444 F. App'x 698 (4th Cir. 2011) ....................24

*Grice v. PNC Mortg. Corp. of Am.*,
No. 8:97-CV-03084, 1998 WL 350581 (D. Md. May 21, 1998)....................14

*Haney v. Genworth Life Ins. Co.*,
No. 3:22cv55, 2023 U.S. Dist. LEXIS 15589 (E.D. Va. Jan. 30, 2023)....................19

*Holsey v. Armour & Co.*,
743 F.2d 199 (4th Cir. 1984) ....................21

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ....................10

*Jeffreys v. Commc'ns Workers of Am., AFL CIO*,
212 F.R.D. 320 (E.D. Va. 2003) ....................21, 22, 23

*In re Jiffy Lube Secs. Litig.*,
927 F.2d 155 (4th Cir. 1991) ....................15, 16

*Jones v. Dominion Res. Servs.*,
601 F. Supp. 2d 756 (S.D. W. Va. 2009)....................27

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
2009 WL 3094955 (E.D. Va. Sept. 28, 2009)....................11

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ....................13, 15

*McGlothlin v. Connors*,
142 F.R.D. 626 (W.D. Va. 1992)....................21

*In re Mid-Atlantic Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983)....................11, 16

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
237 F.R.D. 551 (D. Md. 2006)....................22, 23

*In re Montgomery Cty. Real Est. Antitrust Litig.*,
83 F.R.D. 305 (D. Md. 1979)....................15

*In re NeuStar, Inc. Sec. Litig.*,
No. 1:14CV885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ....16

*In Re Royal Ahold N.V. Securities & ERISA Litigation*,
No. 103-MD-01539, 2006 WL 132080 (D. Md. Jan. 9, 2006) ....11

*Stanley v. Central Garden and Pet Corp.*,
891 F.Supp.2d 757 (D. Md. 2012) ....21

*Starr v. Credible Behavioral Health, Inc.*,
No. 20-2986 PJM, 2021 WL 2141542 (D. Md. May 26, 2021) ....27

*Stillmock v. Weis Markets, Inc.*,
385 F. App'x 267 (4th Cir. 2010) ....24

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ....27

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ....21

*In re Titanium Dioxide Antitrust Litig.*,
No. 1:10-CV-00318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ....13

*In re Traffic Executive Association-Eastern Railroads*,
627 F.2d 631 (2d Cir. 1980) ....13

**Other Authorities**

Federal Rule of Civil Procedure 23 .... *passim*

Fed. R. Civ. P. 23(a) .... *passim*

Fed. R. Civ. P. 23(b) ....12, 20, 24, 25

Fed. R. Civ. P. 23(c) ....26

Fed. R. Civ. P. 23(e) .... *passim*

Fed. R. Civ. P. 23(g) ....16, 26

Plaintiffs Richard Butler and Timothy Knotts ("Plaintiffs") respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of the Proposed Settlement with Defendant Fairmont Federal Credit Union ("FFCU" or "Defendant"). The Settlement provides timely and significant benefits to Settlement Class Members whose personally identifiable information ("PII") was accessible to an unauthorized party during a security incident that temporarily impacted FFCU's network on or about September 30, 2023 (the "Data Incident"). Plaintiffs now submit this memorandum in support of their request that the Court find that the Settlement is procedurally and substantively fair under Rule 23(e), so that Notice may be issued to the Settlement Class and that the proposed Class may be certified.[1]

Accordingly, pursuant to Federal Rule of Civil Procedure 23, including Rule 23(e), Plaintiffs ask that the Court enter an order that:

(a) Preliminarily approves the Settlement, subject to later final approval;

(b) Conditionally certifies the Settlement Class with respect to claims against FFCU;

(c) Appoints Plaintiffs as class representatives for the Settlement Class;

(d) Appoints Gerald D. Wells, III of Lynch Carpenter, LLP and Troy Giatras and Matthew Stonestreet of the Giatras Law Firm as Class Counsel;

(e) Appoints Kroll LLC as the Settlement Administrator;

(f) Approves the proposed notice plan and the proposed forms of Class Notice (attached as Exhibits 2 and 3 to the Settlement Agreement)

(g) Sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement, including: (i) the date, time and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement (the "Final Approval Hearing"); (ii) the deadline for Settlement Class Members to exclude themselves (*i.e.*, opt out) from the Settlement; (iii) the deadline for Class Counsel to submit their petition for attorneys' fees and expenses and for Plaintiffs to file their

[1] The capitalized terms used in Plaintiffs' Memorandum shall be construed according to their meaning as defined in the Settlement Agreement except as may otherwise be indicated.

application for a Service Award; and (iv) the deadline for Settlement Class Members to object to the settlement and any of the related petitions; and

(h) Stays all proceedings in the Action except those relating to approval of the Settlement.

*See* [Proposed] Preliminary Approval Order, filed concurrently herewith.[2]

## I. BACKGROUND

### A. OVERVIEW OF THE LITIGATION

Defendant Fairmont Federal Credit Union ("FFCU" or "Defendant") is a federally chartered, not-for-profit financial cooperative that offers banking services, including checking and savings accounts, loans, and other financial products to its members. Plaintiffs and other similarly situated current and former customers and persons who engaged in financial transactions with those customers ("Settlement Class Members") provided FFCU with highly sensitive personal and financial information (directly or indirectly), including, *inter alia*, full name, date of birth, address, Social Security number, U.S. Alien registration number, passport number, driver's license or state ID number, military ID number, Tax ID number, non-U.S. national identification number, financial account number, routing number, financial institution name, credit card/debit card number, security code/PIN number, credit card/debit card expiration date, IRS PIN number, full access credentials, security questions and answers, and digital signatures ("PII"), together with certain protected health information, including health insurance policy/subscriber number, treatment information/diagnosis, prescription information, provider name, MRN/patient ID, and

[2] Defendant does not oppose the requested relief in this Motion; however, Defendant does not concur or admit to any of the allegations contained in the Class Action Complaint ("Complaint") or any other complaints filed against Defendant. For the avoidance of doubt, Defendant does not concede the factual or legal basis for any claim asserted in the Complaint and denies liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Defendant may disagree with certain of those characterizations and descriptions.

Medicare/Medicaid number ("PHI," and collectively with "PII," "Private Information"). The specific Private Information that was impacted varied by Class Member and not all data elements were impacted as to each Class Members.

On information and belief, an unauthorized third party gained access to FFCU's computer systems and the Private Information stored on those systems (the "Data Incident"). As a result of the Data Incident, the Private Information of Plaintiffs and Settlement Class Members was exposed and placed at a heightened risk of misuse, including identity theft and various forms of financial fraud. FFCU later notified affected individuals that their information may have been compromised in the Data Incident.

Plaintiffs allege that the Data Incident was a foreseeable result of FFCU's failure to implement and maintain reasonable data security measures to protect the Private Information in its possession. Plaintiffs further allege that, by obtaining and storing Plaintiffs' and Settlement Class Members' Private Information, FFCU assumed legal and equitable duties to safeguard that information and to use it only for legitimate business purposes.

Plaintiffs filed this putative class action in the United States District Court for the Northern District of West Virginia on behalf of themselves and all others similarly situated. They assert claims arising from FFCU's alleged failure to adequately secure the Private Information entrusted to it and seek monetary, injunctive, and other relief. The proposed Settlement is the product of these efforts and, if approved, will provide meaningful relief to Settlement Class Members for the risks and injuries associated with the Data Incident.

### B. Mediation and Settlement

The Settlement is the product of extensive, arm's-length negotiations between experienced counsel, including a formal mediation session before a respected neutral and subsequent months of continued settlement discussions. *See* SA Recitals; SA § 1.

On April 24, 2026, the Parties mediated this matter before Steven R. Jaffe of Upchurch Watson White & Max Mediation Group, an experienced mediator with substantial background in complex class action and data breach litigation. During that full-day mediation, the Parties exchanged information regarding the claims and defenses, the nature and scope of the Data Incident, the size and composition of the proposed Settlement Class, and the risks and costs associated with continued litigation, including class certification, merits motions, trial, and potential appeals. While that mediation did not result in a settlement, the Parties continued to discuss the possibility of resolution and ultimately signed a term sheet memorializing their agreement on May 7, 2026. *See* Joint Status Report, ECF No. 35, ¶ 1.

Following the mediation, the Parties continued to engage in productive, arm's-length negotiations to refine and memorialize the Settlement's terms. These discussions included detailed negotiations regarding the size and allocation of the Settlement Fund, the scope of the proposed class definition, the forms and value of relief to be made available to Settlement Class Members, the scope of the release, and the administration and notice program. Consistent with those negotiations, the Parties executed a binding Settlement Term Sheet setting forth the essential terms of the agreement and committing to work cooperatively and in good faith to prepare a comprehensive Settlement Agreement and supporting papers for submission to the Court in conformity with Federal Rule of Civil Procedure 23.

Since executing the Term Sheet, the Parties continued to work together to finalize the long-form Settlement Agreement and to select and engage an appropriate Settlement Administrator to implement the notice and claims program. These negotiations were conducted at arm's length by experienced counsel on both sides, with the assistance of an independent mediator. There is no indication of collusion or self-dealing. The history of the mediation, the execution of a detailed Term Sheet, and the Parties' continued efforts to finalize the Settlement Agreement and claims administration arrangements all support the conclusion that the Settlement is the product of a fair, informed, and non-collusive negotiation process, satisfying the procedural fairness requirement of Rule 23(e).

### C. The Terms of the Proposed Settlement

The material terms of the Settlement are set forth in a binding Settlement Agreement (the "Settlement Agreement" or "SA"). In summary, the Settlement provides for: (1) certification of a Settlement Class for settlement purposes only; (2) a non-reversionary Settlement Fund of $1,783,857.64 to provide cash benefits to Settlement Class Members and to pay notice and administration costs, attorneys' fees and expenses, service awards, and the cost of identity-theft protection; (3) meaningful data-security enhancements at FFCU for a period of five years; (4) a robust notice and claims program; and (5) releases narrowly tailored to the claims at issue in this litigation. See SA § 2

#### 1. The Settlement Class

The Settlement contemplates certification, for settlement purposes only, of a Settlement Class defined as:

> all individuals in the United States whose Private Information was potentially impacted in the data security incident publicly disclosed by Defendant on or about April 30, 2025 (the "Data Incident").

*See* SA § 1.43.

Standard exclusions (including the Court and its staff, Defendant and its current and former officers and directors, and any persons who timely and validly request exclusion from the Settlement Class) will be set forth in the Settlement Agreement. *See id*.

FFCU represents that the Settlement Class consists of approximately 187,038 individuals whose unique Private Information was potentially impacted in the Data Incident. Defendant will provide the approved Settlement Administrator with a class list containing the names and contact information of Settlement Class Members to the extent reasonably available. The Parties will work cooperatively to confirm the final class size. If the number of Settlement Class Members increases by more than one percent (1%) over 187,038, Plaintiffs will have the right to terminate the Settlement. *See* SA § 1.43.

**2. The Settlement Fund**

FFCU will fund, or cause to be funded, a non-reversionary cash settlement fund in the total amount of $1,783,857.64 (the "Settlement Fund"). *See* SA § 2. The Settlement Fund constitutes the sole monetary consideration for the Settlement and will be used to pay:

- notice and administration costs;
- any Court-approved attorneys' fees and expenses;
- any Court-approved service awards to the Class Representatives, State Court Plaintiffs, and Tag-Along Plaintiffs;
- the cost of providing identity-theft protection and related services; and
- cash benefits to Settlement Class Members who submit valid claims.

*See* SA *Id*.

No portion of the Settlement Fund will revert to Defendant. Apart from funding the Settlement Fund, FFCU's only other financial obligations under the Settlement are: (i) paying its own defense fees and costs; (ii) bearing the costs of the data-security enhancements described below; and (iii) paying for any ongoing costs of credit monitoring that were previously elected by

any Settlement Class Member. None of these additional obligations will be deducted from the Settlement Fund. *See* SA § *Id*.

The "Net Settlement Fund" is defined as the Settlement Fund less: (1) notice costs and administration costs; (2) Court-approved attorneys' fees and expenses; (3) Court-approved service awards; and (4) the costs associated with procurement of identity-theft protection services. The Net Settlement Fund will be used exclusively to pay cash benefits to Settlement Class Members who submit valid claims. *See Id*.

**3. Proposed Injunctive Relief - Data-Security Enhancements**

In addition to the monetary relief, FFCU will continue to maintain and provide the enhanced cybersecurity measures, including additional training, that it implemented as a result of the Data Incident and this Litigation (the "Enhancements") for a period of five years from the date the Court grants preliminary approval of the Settlement. *See* SA § 2.3(e). The costs associated with the Enhancements will be borne solely by FFCU and will not be paid from, or reduce, the Settlement Fund.

FFCU will provide a confidential declaration for in camera review by the Court and for review by Plaintiffs' Counsel, describing the Enhancements in detail and providing an estimated value of those measures. See *Id*.

**4. Proposed Notice and Claims Program; Settlement Benefits**

All Settlement Class Members will receive the benefit of the Enhancements automatically, without the need to submit a claim. To receive any monetary benefit from the Settlement Fund, a Settlement Class Member must submit a timely and valid claim form (a "Valid Claim") to the Settlement Administrator. *See* SA § 2.2. Settlement Class Members may elect among the following benefits, subject to the terms of the Settlement Agreement:

**a. Out-of-Pocket Loss Reimbursement**

Settlement Class Members may seek reimbursement of documented, unreimbursed out-of-pocket losses and expenses that they believe are fairly traceable to the Data Incident, up to $7,500 per person, upon submission of third-party documentation, if:

1. the loss is an actual, documented, and unreimbursed monetary loss;
2. the loss was more likely than not caused by the Data Incident;
3. the loss was occurred between September 30, 2023 and the close of the Claims Period; and
4. the loss is not already compensated under another category of Settlement benefits.

*See* SA § 2.3(a) (Out-of-Pocket Losses).

**b. Reimbursement for Attested Time**

Settlement Class Members who spent time remedying issues related to the Data Incident may receive $35 per hour, up to a 4-hour cap (maximum $140), upon submission of an attestation describing how the time was spent and how it relates to the Data Incident. Time-spent claims may be combined with any other Settlement benefit, except the Alternative Cash Payment described below. *See* SA § 2.3(b) (Reimbursement for Attested Time).

**c. Alternative Cash Payment.**

As an alternative to making a claim for out-of-pocket losses, Settlement Class Members may request an Alternative Cash Payment of up to $150, subject to pro rata adjustment if necessary, as described below. *See* SA § 2.3(c) (Alternative Cash Payments).

**d. Identity-Theft Protection.**

In addition to any cash benefits, all Settlement Class Members will be entitled to enroll in three (3) years of one-bureau credit monitoring and identity restoration services, including identity-theft insurance with limits of up to $1,000,000, through IDX/ZeroFox, Cyex, or another mutually agreed-upon provider offering similar services. *See* SA § 10. The cost of these services will be paid from the Settlement Fund as part of the overall relief. *See* SA § 2.3(d).

### 5. Pro Rata Adjustment

The Settlement Administrator will first apply the Net Settlement Fund to pay for all Out-of-Pocket Losses. The amount of the Net Settlement Fund remaining after all Out-of-Pocket Losses will next be used to pay for all reimbursements for Attested Time. The amount of the Net Settlement Fund remaining after all Out-of-Pocket Losses and all Reimbursements for Attested Time are applied and the payments are made shall be referred to as the "Post Loss Payment Net Settlement Fund. The Settlement Administrator shall utilize the Post Loss Payment Net Settlement Fund to make all valid and timely claims for the Alternative Cash Payment. The amount of each Alternative Cash Payment shall be calculated by dividing the Post Loss Payment Net Settlement Fund by the total number of valid and timely Claim Forms submitted by Settlement Class Members who elected the Alternative Cash Payment. In performing this calculation, the Settlement Administrator shall first deduct the costs of performing the Credit Monitoring for all Settlement Class Members who elected the Credit Monitoring. From the remaining amount, the Settlement Administrator will determine the actual dollar amount the Alternative Cash Payment to be sent to each Settlement Class Member who elected to receive the Alternative Cash Payment will be.

### 6. Attorneys' Fees, Expenses, and Service Awards

Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation expenses to be paid from the Settlement Fund, in an amount to be approved by the Court. *See* SA § 7. Class Counsel will also seek reasonable service awards for the Settlement Class Representatives in recognition of their service to the Settlement Class, also to be paid from the Settlement Fund and subject to Court approval. *See Id*. The specific amounts requested will be disclosed in the motion for attorneys' fees and expenses and service awards and in the Settlement notices.

**7. Releases**

In exchange for the relief provided by the Settlement, and upon the Effective Date, Settlement Class Members (and all Releasing Persons) who do not validly and timely request exclusion will release FFCU and the other Released Persons from all claims that were or could have been asserted in the Litigation and that arise out of or relate to the Data Incident and the alleged compromise of Settlement Class Members' Private Information, as further defined in the Settlement Agreement. *See* SA § 6 (Releases). The releases will be tailored to the factual predicate of the claims at issue and will not release claims unrelated to the Data Incident. *See id*.

## II. ARGUMENT

### A. THE COURT HAS ARTICLE III JURISDICTION FOR PURPOSES OF PRELIMINARY APPROVAL

At this stage, the Court may rely on the well-pleaded allegations of the operative complaint and the record submitted with this motion. *See, e.g., Frank v. Gaos*, 139 S. Ct. 1041, 1046–49 (2019). Plaintiffs allege that an unauthorized third party accessed FFCU's systems and the highly sensitive Private Information of Plaintiffs and Settlement Class Members, including names, Social Security numbers, and financial account information, thereby subjecting them to a substantial risk of identity theft and fraud and causing them to expend time and money responding to the Data Incident. Those allegations are sufficient to establish concrete injury fairly traceable to the Data Incident and redressable by the Settlement's monetary and injunctive relief. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621–24 (4th Cir. 2018).

### B. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

The Court should grant preliminary approval to the Settlement because it represents an excellent result for the Settlement Class and is well within the range of possible final approval.

As an initial matter, "[l]itigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Id.*; *see also Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) (same).

Federal courts must approve class action settlements and ensure that settlement class members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval is granted when a proposed settlement is "within the range of possible approval," *Benway v. Resource Real Estate Servs., LLC*, 2011 WL 1045597, *4 (D. Md. Mar. 16, 2011), and the "principal legal effect of [an order grant preliminary approval] is to allow notice to issue to the potential beneficiaries of the Settlement," *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1381 (D. Md. 1983). Moreover, in determining whether a settlement warrants preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement" and "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384; *see also In Re Royal Ahold N.V. Securities & ERISA Litigation*, No. 103-MD-01539, 2006 WL 132080 at *19 (D. Md. Jan. 9, 2006) (granting preliminary approval where Settlement "appear[ed] on its face to be fair. . . and to fall well within the range of possible final approval.").

Rule 23(e)(1) governs preliminary approval and provides that a court must grant preliminary approval and direct that notice of the proposed settlement be given to the class "if

giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2) [(as a fair, reasonable, and adequate compromise)]; and (ii) certify the class for purposes of judgment on the proposal." In other words, preliminary approval is mandated upon the court's preliminary determination that it "will likely be able to" grant final approval to the proposal and that it "will likely be able to" certify the proposed settlement class for judgment. *See id*.

As set forth below, preliminary approval of this proposed Settlement is appropriate as it satisfies all criteria for preliminary approval. The Settlement represents a substantial value to the proposed Settlement Class that is fundamentally fair, reasonable, and adequate, and the Settlement Class meets all of the requirements for certification under Rules 23(a) and (b)(3).

Accordingly, Plaintiff requests that the Court grant the requested relief.

### C. STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. When a proposed class settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632–633 (4th ed. 2004).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. Manual for Complex Litigation at § 21.62. The Fourth Circuit has developed multifactor tests (which significantly overlap with the factors considered in Rule 23(e)) to ascertain both the "fairness" and the

"adequacy"[3] of proposed class action settlements. As to fairness, the additional factors are: (1) whether the proposed settlement is the product of good faith bargaining at arm's length; (2) the posture of the case at settlement; (3) the extent and sufficiency of discovery conducted; (4) counsel's experience with similar litigation and their relevant qualifications; and (5) any pertinent circumstances surrounding the negotiations. *See In re Titanium Dioxide Antitrust Litig*., No. 1:10-CV-00318, 2013 WL 5182093, at *3 (D. Md. Sept. 12, 2013) (citing *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp. 1379, 1383-85 (D. Md. 1983)). As to adequacy, the additional factors are: (1) the relative strength of the plaintiff's claims; (2) weaknesses in the plaintiff's case, including proof-related obstacles or particularly strong defenses; (3) the cost of additional litigation; (4) defendants' ability to pay a judgment; and (5) any opposition to the settlement. *Id.* at *4

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. Manual for Complex Litigation at § 21.62. If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Thus, "[i]f the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the

[3] The Fourth Circuit has not adopted a test, nor enumerated factors for assessing the "reasonableness" of a proposed settlement. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Gaskin v. Pennsylvania*, 389 F. Supp. 2d 628, 630 (E.D. Pa. 2005).

Class Counsel believes the terms of the proposed settlement in this case are fundamentally fair, reasonable and adequate, especially when considering the risk, expense, complexity and delay associated with further litigation. In making its determination of these risks, the Court should give deference to the opinions of Class Counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

### D. The Proposed Settlement is Fair

#### 1. The Proposed Settlement is the Product of Good Faith Bargaining at Arm's Length

The purpose of the fairness analysis is to ensure that the settlement agreement is the "result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Good faith bargaining will be found where counsel for the parties "have performed in a professional manner," and the settlement "contains favorable results for both parties, but at the same time, reflects mutual concessions." *Grice v. PNC Mortg. Corp. of Am.*, No. 8:97-CV-03084, 1998 WL 350581, at *6 (D. Md. May 21, 1998).

In the case at bar, there is no evidence of fraud or collusion occurring between counsel. The parties were vigorously represented by counsel in adversarial litigation. Moreover, the proposed settlement is the result of protracted arm's-length negotiations, including a full day

mediation with respected mediator Steven R. Jaffe of Upchurch Watson White & Max Mediation Group. Further, as noted above, even after the settlement in principle was reached, it took weeks of additional negotiations before all the terms of the proposed settlement were finalized. The participation of the Upchurch Watson White & Max Mediation Group insured that the settlement negotiations were conducted at arm's length and without collusion between the Parties. Accordingly, this factor favors approval.

**2. This Case is at an Appropriate Posture for Settlement**

For a settlement agreement to meet the fairness standard, the case must have been sufficiently litigated, and not premature so as to evidence collusion between party counsel. In the instant matter, Defendant filed, and Plaintiffs vigorously opposed, a motion to dismiss the action in its entirety. After Defendant's motion was largely denied, with the exception of the unjust enrichment claim that was dismissed, the parties discussed potential resolution and engaged in informal discovery. Thereafter, the Parties participated in a contested mediation session with Mr. Jaffe. It is only with Mr. Jaffe's assistance that the Parties were able to reach an accord as memorialized in the present Settlement. This factor weighs in favor of approval. *See, e.g.*, *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (upholding determination that settlement was fair, where parties had engaged in informal discovery, and made substantive concessions on both sides during negotiations).

**3. Sufficient Discovery Has Been Conducted**

Preliminary approval is appropriate where discovery has been, at least partially completed, such that all parties understand "the facts of the case on the merits." *In re Montgomery Cty. Real Est. Antitrust Litig.,* 83 F.R.D. 305, 315 (D. Md. 1979); *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* 952 F.3d 471, 484 (4th Cir. 2020) (upholding fairness determination because by the time of settlement, formal discovery,

including depositions of thirteen witnesses and reviewing "vast quantities of documents," had been completed). This is in accord with the second *Jiffy Lube* factor, which considers the extent of discovery. "This factor permits the Court to ensure that all parties appreciate the full landscape of their case when agreeing to enter into the Settlement." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14CV885, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015). In the instant matter, Plaintiffs had more than a sufficient factual record on which to base their conclusion that the proposed Settlement is fair, reasonable, and adequate.

Through, *inter alia*, Plaintiffs investigation of the facts behind the Data Incident, the parties briefing on Defendant's motion to dismiss certification and the Parties' contested mediation, sufficient discovery has been conducted prior to the proposed settlement of this litigation. Accordingly, this factor also weighs in favor of approval.

**4. Plaintiffs' Counsel is Qualified and Experienced in Similar Litigation**

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel – Lynch Carpenter LLP and the Giatras Law Firm – easily meet the requirements of Rule 23(g). As detailed in the Wells Decl., Plaintiffs is represented by counsel experienced in class action litigation including directly analogous cases. Indeed, Plaintiff's attorneys have extensive experience in class action litigation, including litigation involving data breaches. *See* Declaration of Gerald D. Wells ("Wells Decl.), ¶¶ 25-27. Plaintiff's primary counsel, Lynch Carpenter, LLP, has been named Class Counsel in a substantially similar case involving data breaches. Id. at ¶¶ 25-26.

**5. The Proposed Settlement is Adequate**

Courts within the Fourth Circuit must "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement" to determine whether the proposed settlement is adequate. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983).

**a. The Relative Strength of Plaintiffs' Claims**

Plaintiffs have strong arguments in their favor were this case to go forward. In the instant matter, the Court has already ruled that Plaintiffs have Article III standing to pursue their claims and that they have plausibly alleged claims for negligence and breach of implied contract. In doing so, the Court found that Plaintiffs have plausibly alleged compensable injuries. While these findings are not final rulings on the merits of Plaintiffs' claims, these are the significant hurdles plaintiffs face in data breach litigation. As such, for preliminary purposes, this factor weighs in favor of approval.

**b. Weaknesses in the Plaintiff's Case**

As with most litigation, there are uncertainties and risks. Proceeding to trial contains numerous inherent risks for both Plaintiffs and Defendant. As an initial matter, there is a risk that individualized fact inquiries could hinder class certification. As detailed herein, Plaintiffs fully believe that this case satisfies all the requirements of Rule 23. Notwithstanding Plaintiffs confidence in their claims and attaining class certification, Defendant has indicated that it will vigorously oppose certification.

This factor weighs in favor of approval of the proposed Settlement or at worst is neutral.

**c. The Cost of Additional Litigation**

If preliminary approval is not granted, the parties anticipate immediately commencing fulsome discovery, including depositions, continued motion practice and also preparing for trial. Following discovery and motion practice, the parties will move forward with a trial that could entail the hiring of an expert and continued motion practice. This additional discovery, motion practice, and trial would involve thousands, if not hundreds of thousands, of additional attorneys' fees incurred by the parties. *See, e.g.*, *Alloways v. Cruise Web, Inc.*, No. 8:17-CV-02811, 2019 WL 1902813, at *10 (D. Md. Apr. 29, 2019) (noting the significant legal costs that would be incurred

where the parties "would have to engage in motion practice concerning final class certification, formal discovery, and dispositive motions, not to mention trial."). Even more importantly, the long delay threatened by continued litigation and appeal would delay Putative Settlement Class Members' receipt of the benefits of this Settlement. Accordingly, this factor weighs in favor of settlement.

**d. Defendant's Ability to Pay a Judgment**

Defendant's ability to pay is largely predicated on its insurance policies. As a credit union, Defendant's assets largely consist of the deposits of its members. The result of this reality is that any judgment in excess of insurance could be paid from the assets of the Settlement Class Members themselves. Continuing this litigation will ultimately result in Defendant's insurance carrier paying legal fees and reducing the amount available to Settlement Class Members should this matter resolve at a later date.

Settlement Class Counsel believes that the proposed settlement at this juncture is in the best interests of the Putative Settlement Class Members. Accordingly, this fact weighs in favor of granting preliminary approval of the proposed Settlement.

**e. There is no opposition to the settlement**

Since Class Notice has not been disseminated yet, the Settlement Class has not had the opportunity to opine on the Settlement. Class Counsel will further address this factor at the Final Approval Hearing. and Plaintiff is in favor of the Settlement. Therefore, this factor weighs in favor of granting preliminary approval of the proposed Settlement.

**E. THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS**

Rule 23(e)(2)(C)–(D) asks whether the relief is adequate and whether the proposal treats class members equitably. As noted above, the Settlement provides:

- A non-reversionary Settlement Fund of $1,783,857.64 to pay notice and administration, attorneys' fees and expenses as approved by the Court, service awards, identity-theft protection, and cash benefits to Settlement Class Members who submit valid claims.

- Cash benefits including up to $7,500 in documented out-of-pocket loss reimbursement, compensation for time spent at $35/hour up to 4 hours, and an Alternative Cash Payment of up to $150 per Settlement Class Member, subject to pro rata adjustment if necessary.

- Three years of one-bureau credit monitoring and identity restoration services with up to $1,000,000 in insurance, available to all Settlement Class Members.

- Five years of data-security Enhancements at FFCU's expense, not paid from the Settlement Fund.

Given the risks, costs, and delays of continued litigation - including contested motions on standing, class certification, and liability; trial; and appeals - and the finite insurance available to fund any recovery, this relief is well within the range of reasonableness for preliminary approval. The claims process is straightforward, the benefits are tailored to the alleged harms, and any necessary pro rata reductions will be applied uniformly, ensuring equitable treatment of Settlement Class Members.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiffs. They are instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution they made to the prosecution of the litigation, including the burden and risks associated with bringing this action publicly as well as the time they expended on behalf of the class. Service Payments are routinely approved in this Circuit. *See, e.g., Haney v. Genworth Life Ins. Co.*, No. 3:22cv55, 2023 U.S. Dist. LEXIS 15589 (E.D. Va. Jan. 30, 2023) (approving service payment to 4 class representatives in recognition of their services to the class, including participating in "pre-suit discovery" and production of relevant documentation).

Because of Plaintiffs' individual efforts, Putative Settlement Class Members will receive significant benefits from the Settlement. The Parties have agreed that Plaintiff's counsel will petition the Court for a Service Payment to Plaintiff not in excess of $7,500. Defendant has agreed not to object to this request. Importantly, this Service Payment request is fully disclosed in the Class Notice and the Putative Settlement Class Members will have the opportunity to opine on this request if they should choose.

### F. THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 CLASS FOR SETTLEMENT PURPOSES

Plaintiff requests that the Court certify the following proposed class for settlement purposes only, pursuant to the Settlement Agreement: Plaintiff and all individuals in the United States whose Private Information was potentially impacted in the data security incident publicly disclosed by Defendant on or about April 30, 2025. Excluded from the Settlement Class are: (i) Defendant and its officers and directors; (ii) the judges and court personnel currently assigned to the Litigation or the State Court Actions, and the members of their immediate families; (iii) any natural person or entity that perpetrated or participated in the Data Incident; and (iv) all Persons who validly and timely request exclusion from the Settlement Class. In seeking certification under Federal Rule of Civil Procedure 23, Plaintiff must satisfy the four elements of Rule 23(a), and one or more of the requirements of Rule 23(b). As set forth below, Plaintiff clearly traverses this threshold.

#### 1. Fed. R. Civ. P. 23(a) Requirements are Satisfied

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical

> of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). Here, all four elements are satisfied for purposes of certifying the proposed Rule 23 Class.

**a. Rule 23(a)(1) – "Numerosity"**

The proposed Rule 23 Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R CIV. P. 23. There is no set minimum number of potential class members that fulfills the numerosity requirement. See *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); s*ee also, Stanley v. Central Garden and Pet Corp.*, 891 F.Supp.2d 757, 770 (D. Md. 2012) (Holding that "[c]lasses of as few as 25 to 30 have been found to raise[ ] the presumption that joinder would be impracticable") (internal quotations omitted). Here, the number of Class Members in the Rule 23 Class consists of the Settlement Class consists of approximately 187,038 individuals. Wells Decl. at ¶ 18. The numerosity requirement is therefore satisfied

**b. Rule 23(a)(2) – "Commonality"**

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). All that is needed is one common issue. *See McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Jeffreys*, 212 F.R.D. at 322. The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.*; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

**c. Rule 23(a)(3) – "Typicality"**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R CIV. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.

Typicality is demonstrated where a plaintiff can show that his "interest in prosecuting his own case...simultaneously [advances] the interests of the absent class members." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (D. Md. 2006). The crux of the typicality requirement is captured by the notion that "as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir.1998). Plaintiffs' claims are typical of Settlement Class Members because they arise from the same Data Breach and

advance the same overarching legal theories, including that Defendant failed in its common law duties to protect their Private Information.

**d. Rule 23(a)(4) – "Adequacy"**

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R CIV. P. 23. "Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (*citing Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)). To assess adequacy, courts within the Fourth Circuit focus on whether (1) the named plaintiff's interests are not antagonistic to those of other class members, and (2) plaintiff's attorneys are competent, qualified, and experienced. *See Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006); *Barnett v. W.T. Grant Co.,* 518 F.2d 543 (4th Cir. 1975).

Here, Plaintiffs satisfy both prongs and adequacy is readily met. First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs seek to hold Defendant accountable for, among other things, allegedly failing to secure their Private Information and protect it from being compromised by third-party actors. As such, Plaintiffs' interests are perfectly aligned with the interests of the absent Settlement Class Members, thereby meeting the first adequacy prong.

Second, as discussed in greater detail below, Class Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation – including data breach litigation.

### 2. The Rule 23 Class Should Be Certified Under Rule 23(b)

In addition, Plaintiffs must satisfy Rule 23(b)(3)'s two additional requirements: (1) common questions of law or fact must "predominate over any questions affecting only individual members" and (2) "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements here.

#### a. Predominance is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). The Fourth Circuit has also held that the predominance analysis is "qualitative rather than quantitative," meaning that, even where there is a high number of individual damages issues, predominance may still be found where "the qualitatively overarching issue" is the liability of the defendant pursuant to the alleged conduct. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010).

Here, predominance is satisfied because the success or failure of Plaintiffs' challenge to Defendants data security practices. Common liability issues predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide

adjudication worthwhile." *In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

**b. Superiority is Satisfied**

Rule 23(b)(3) also requires the Court to determine whether the class action mechanism is superior to resolution of the disputes through other available means. This superiority prong consists of four (4) factors to consider when determining whether a class action is superior to other adjudication: "(A) the interests of the members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of other pending litigation about the controversy by members of the class; (C) the desirability of concentrating the litigation in a particular forum; and (D) the difficulties likely to be encountered in management of the class action." Fed. R. Civ. Pro. 23(b)(3); see also *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. October 18, 2010).

Here, each of these factors weighs in favor of the certification of the settlement class. Other than the State Tag-along-Actions addressed by this Settlement, Plaintiffs are not aware of any other litigations pending against Defendant for the same alleged violations in this lawsuit in the State of West Virginia. There is no indication that the absent Settlement Class Members would prefer to prosecute this action individually. Concentrating this litigation in this Court is desirable because Defendants are headquartered in West Virginia. Lastly, when a certification is for the settlement purposes only, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The superiority requirement is satisfied.

### G. THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

The Parties' proposed means of class notice meets or exceeds the standards for due process and Rule. Here, the Parties proposed notice plan includes direct mail, email (where available) and website publication. This comprehensive notice plan is intended to fully inform Settlement Class members of the Action, the proposed Settlement, and the information they require in order to make informed decisions about their rights, including the date, time and location of the Final Fairness Hearing.

### H. LYNCH CARPENTER, LLP, THE GIATRIS LAW FIRM AND THE PENCE LAW FIRM SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT CLASS

Settlement Class Counsel easily meet the requirements of Rule 23(g). Importantly, Class Counsel are experienced in class action litigation including directly analogous cases. Notably Lynch Carpenter has been appointed class counsel in many class actions, including data breach

class actions. See Wells Decl. ¶¶ 25-27; *See* Lynch Carpenter resume attached to Wells Decl. at Ex. 2,

## I. The Proposed Attorneys' Fees Are Reasonable

"In approving either a Rule 23 settlement or a private settlement of FLSA claims, the reasonableness of any award of attorneys' fees must be assessed." *Edelen v. Am. Residential Servs., LLC,* Civil Action No. DKC 11-2744, 2013 WL 3816986 at *11 (D. Md. July 22, 2013). In Rule 23 class actions, it is not uncommon to use a percentage method to calculate an award of attorneys' fees in common fund cases. ; *see also Jones v. Dominion Res. Servs*., 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."). Indeed, "the percentage method is more efficient and less burdensome than the traditional lodestar method and offers a more reasonable measure of compensation for common fund cases." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995).

As noted above, Class Counsel will seek an award of attorney's fees in an amount not to exceed one-third of the Settlement Amount. A request for one-third of a settlement fund is common in this Circuit and generally considered reasonable. *See Starr v. Credible Behavioral Health, Inc.,* No. 20-2986 PJM, 2021 WL 2141542 at *5 (D. Md. May 26, 2021) (citing *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505-06 (M.D.N.C. 2018). Pursuant to the Settlement Agreement, prior to a final approval hearing, Class Counsel will file a separate motion justifying the appropriateness of this request in greater detail. Further, and most importantly, Class Counsel's intent to seek up to one-third of the Settlement Amount in fees and for reimbursed expenses is plainly documented in the proposed Class Notice. As such, Class Counsel will be fully prepared to substantiate their fee request at the final approval hearing, after dissemination of notice

and Settlement Class Members have had an opportunity to opine on the propriety of counsel's request.

## III. CONCLUSION

For the reasons set forth above and in the supporting materials, Plaintiffs respectfully request that the Court:

A. Preliminarily certify the Settlement Class for settlement purposes only;

B. Preliminarily approve the Settlement as fair, reasonable, and adequate under Rule 23(e);

C. Approve the proposed notice plan, forms of notice, and claim form and direct that notice be disseminated to the Settlement Class;

D. Appoint the proposed Settlement Administrator;

E. Approve the proposed provider of identity-theft protection and restoration services;

F. Appoint Plaintiffs' counsel as Class Counsel for the Settlement Class; and

G. Set a date and time for a final approval hearing and related deadlines as proposed in Plaintiffs' proposed Preliminary Approval Order.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Michael W. Taylor*
**PENCE LAW FIRM PLLC**
Christopher D. Pence (WVSB # 9095)
Michael W. Taylor (WVSB # 11715)
10 Hale Street, 4th Floor
Charleston, WV 25329
T: (304) 345-7250
cpence@pencefirm.com
mtaylor@pencefirm.com

**LYNCH CARPENTER, LLP**
Gerald D. Wells, III (admitted *pro hac vice*)
Robert J. Gray (admitted *pro hac vice*)
1760 Market Street, Suite 600

Philadelphia, PA 19103
T: 267-609-6910
jerry@lcllp.com
rob@lcllp.com

**THE GIATRAS LAW FIRM, PLLC**
Matt Stonestreet, Esq. (WVSB#11398)
Troy N. Giatras, Esq. (WVSB#5602)
118 Capitol Street, Suite 400
Charleston, West Virginia 25301
(304) 343-2900 / (304) 343-2942
*facsimile*matt@thewvlawfirm.com
troy@thewvlawfirm.com

***Attorneys for Plaintiffs and the Proposed Class***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

| | |
|---|---|
| RICHARD BUTLER and TIMOTHY KNOTTS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRMONT FEDERAL CREDIT UNION.<br><br>Defendant. | **Civil Case No. 1:25-cv-00094-JPB** |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026 I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Michael W. Taylor*
Michael W. Taylor